{¶ 61} I respectfully dissent from the majority because neither this court nor the trial court had jurisdiction to consider the merits of Appellants' untimely petitions. For this reason I would dismiss Appellants' appeals for lack of jurisdiction.
 {¶ 62} Appellants admit that they did not file their petitions for post-conviction relief within 180 days after the bulk of their trial transcripts were filed in this court in their appeals from their convictions, but claim that their petitions were nevertheless timely for two reasons: 1) the trial transcripts were not completely filed until a transcript of an audiotape exhibit which was played for the jury was filed in this court and 2) due process considerations require that a later date be used to calculate the time within which Appellants must be required to file their post-conviction relief petitions.
 {¶ 63} An audiotape which is admitted as an exhibit is not part of the "trial proceedings" and need not be transcribed in order for a trial transcript to be complete. Furthermore, these cases do not involve the sort of compelling facts which justify a deviation from established procedure in order to satisfy due process concerns. Accordingly, Appellants filed their petitions for post-conviction relief outside of the time for filing those petitions, relieving both the trial court and this court of jurisdiction to grant them that relief.
 {¶ 64} R.C. 2953.21(A)(2) states when an offender may file a petition for post-conviction relief. It provides:
 {¶ 65} "Except as otherwise provided in section 2953.23 of the Revised Code, a petition under division (A)(1) of this section shall be filed nolater than one hundred eighty days after the date on which the trialtranscript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or, if the direct appeal involves a sentence of death, the date on which the trial transcript is filed in the supreme court. If no appeal is taken, except as otherwise provided in section 2953.23 of the Revised Code, the petition shall be filed no later than one hundred eighty days after the expiration of the time for filing the appeal." Id. *Page 14 
 {¶ 66} R.C. 2953.23 provides that a trial court can hear a petition for post-conviction relief filed after this date only if either R.C. 2953.23(A)(1) or (2) applies. R.C. 2953.23(A)(1) allows an untimely petition if the petitioner shows 1) that he was unavoidably prevented from discovering the facts underlying his claim for relief or that the United States Supreme Court recognized a new right which applies retroactively to the petitioner and 2) clear and convincing evidence that he would not have been found guilty but for the constitutional error. R.C. 2953.23(A)(2) applies to petitioners who rely on DNA testing to claim they were wrongly convicted. Neither of these exceptions to the requirements in R.C. 2953.21(A)(2) applies to this case and neither defendant argues that they do so apply.
 {¶ 67} When ruling on Appellants' petitions for post-conviction relief, the trial court addressed the substantive arguments in those petitions and these are the issues the parties are raising in their assignments of error. However, we have held that "[t]he requirement that a petition for postconviction relief be filed timely is jurisdictional."State v. Bryant, 7th Dist. No. 04-MA-109, 2005-Ohio-5054, at ¶ 6, citing R.C. 2953.23(A); see also State v. Hill, 160 Ohio App.3d 324,2005-Ohio-1501, 827 N.E.2d 351, at ¶ 15, footnote 3; State v.Hanning, 5th Dist. No. 02 CA 12, 2003-Ohio-3622, at ¶ 9; State v.Gipson, 12th Dist. No. CA2001-11-103, 2002-Ohio-4128, at ¶ 8. Because this is a jurisdictional issue, it can be raised by a reviewing court sua sponte and cannot be waived. Hill at ¶ 15, footnote 3;Gipson at ¶ 8. The fact that this issue was not addressed by the court or the parties at the trial level does not give us the authority to ignore whether we have jurisdiction to address Appellants' petitions for post-conviction relief.
 {¶ 68} The petitions for post-conviction relief in this case were not filed until 185 days after the initial trial transcripts were filed in this case. Appellants argue, however, that September 23, 2005, is not the relevant date for calculating the date by which they had to file their petitions for post-conviction relief.
 {¶ 69} Appellants argue that due process requires that Appellants be allowed to rely on the notice sent to them by the clerk of courts on September 26, 2005, in *Page 15 
order to calculate by when they had to timely file their petitions for post-conviction relief. In making this argument, Appellants rely on federal caselaw which uses the doctrine of equitable tolling.
 {¶ 70} R.C. 2953.21(A)(2) is a statute of limitations for obtaining post-conviction relief. State v. Culberson, 142 Ohio App.3d 656, 662,2001-Ohio-3261, 756 N.E.2d 734. The doctrine of equitable tolling can be used to prohibit the inequitable use of statutes of limitations.Sharp v. Ohio Civ. Rights Com'n, 7th Dist. No. 04 MA 116,2005-Ohio-1119, at ¶ 10. For example, the Ohio Supreme Court has used equitable principles to incorporate the discovery rule into the statute of limitations governing wrongful death lawsuits. See Collins v.Sotka (1998), 81 Ohio St.3d 506, 692 N.E.2d 581. However, "[e]quitable tolling is only available in compelling cases which justify a departure from established procedure." Sharp at ¶ 11. Thus, Ohio law "requires a showing of actual or constructive fraud by a party in the form of representations that the statute of limitations was larger than it actually was, promises of a better settlement if the lawsuit was not filed, or other similar representations or conduct" before a party can get relief through the doctrine of equitable tolling. Sabouri v. OhioDept. of Job Family Serv. (2001), 145 Ohio App.3d 651, 655,736 N.E.2d 1238. This closely resembles federal law, where the United States Supreme Court has said that the doctrine should be used "sparingly" and only in "situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Irwin v. Dept. ofVeterans Affairs (1990), 498 U.S. 89, 96, 111 S.Ct. 453,112 L.Ed.2d 435.
 {¶ 71} Appellants argue that they were misled by the clerk of courts into believing that the transcripts were filed on September 26th and cite a case where a federal court applied equitable tolling because of the actions of a clerk of courts. See Knight v. Schofield (C.A.11, 2002), 292 F.3d 709. The appellant in that case was pursuing an appeal in the Georgia Supreme Court and the clerk of court assured him that he would be informed when the court issued a decision. The court denied *Page 16 
appellant's application for a writ of certiorari, but the clerk inadvertently sent notice of that decision to the wrong person and the appellant was not informed. Appellant later contacted the court and found out his application had been denied. However, the time for filing a federal habeas action had passed by the time the appellant was informed of this fact.
 {¶ 72} The appellate court found that the appellant was entitled to equitable tolling since he was a pro se imprisoned defendant who had exercised diligence in inquiring about the court's decision. The fact that he was not notified of that decision was beyond his control.
 {¶ 73} The situation in these cases is very different. Both Appellants were represented by counsel in both their direct appeals and post-conviction proceedings. Therefore, Appellants were not pro se and imprisoned, like the appellant in Knight. Furthermore the attorneys representing Appellants in their post-conviction proceedings are the same attorneys who represented them in those appeals. Their attorneys had access to the publicly available online docket in each of those appeals, which clearly showed that the transcripts were filed with this court on September 23, 2005.
 {¶ 74} Parties "`are expected to keep themselves informed of the progress of their case.'" State Farm Mut. Auto. Ins. Co. v. Peller
(1989), 63 Ohio App.3d 357, 360, 578 N.E.2d 874. (Internal citations omitted). Thus, Appellants' attorneys should periodically check on the status of those appellate cases. In doing so, they would have easily discovered the date on which those transcripts were filed. For these reasons, this is not the exceptional kind of case which calls for the use of equitable tolling.
 {¶ 75} Appellants raise additional arguments regarding the timeliness of their petitions. Appellants argue that they were required to file their petitions for post-conviction relief within 180 days of January 13, 2008, since this was the last date upon which a transcript was filed with this court in their direct appeals. However, this argument is meritless. *Page 17 
 {¶ 76} R.C. 2953.21(A)(2) requires that the petition be filed "no later than one hundred eighty days after the date on which the trialtranscript is filed in the court of appeals." (Emphasis added). Appellate courts have applied that language literally. For example, appellant in State v. Chavis-Tucker, 10th Dist. No. 05AP-974,2006-Ohio-3105, filed two supplemental transcripts with the appellate court in his direct appeal of pretrial proceedings which occurred in that case. Id. at ¶ 7. The appellate court held that the 180 day time-limit began to run when the trial transcript was filed, not when these supplemental transcripts were filed. Id. at ¶ 8.
 {¶ 77} "The obvious intent of the statute is to place a time limitation on post-conviction actions. Appellant should not be allowed to unilaterally extend the statute's time limitations by filing irrelevant transcripts of pretrial hearings months after the filing of his trial transcript. The controlling date is when the transcript from appellant's trial was filed." (Internal Citations omitted). Id.; see also State v. Johnson (Feb. 9, 2001), 11th Dist. No. 99-T-0143 (Supplementing the appellate record with a suppression hearing transcript did not extend the time for filing a post-conviction relief petition since such a transcript was not a trial transcript).
 {¶ 78} In this case, the transcript filed on January 13, 2006, was not a transcript of any proceeding which occurred before Appellants were convicted of and sentenced for their offenses. Instead, it is a transcript of a hearing which occurred before the trial court months after the appeals from those convictions were instituted. Accordingly, the filing of this transcript does not affect the time within which Appellants had to file their petitions for post-conviction relief.
 {¶ 79} Appellants next argue that a trial transcript was filed on January 4, 2008, and, therefore, they merely had to file their petitions within 180 days of this date. The January 4th transcript was of an audiotape which was both played for the jury and admitted as an exhibit at trial. Appellants believe this transcript is part of the trial transcript since the audiotape was played for the jury.
 {¶ 80} App. R. 9(A) requires that a court reporter transcribe "the proceedings" in the trial court, but does not clarify what those proceedings consist of. The First *Page 18 
District held that those proceedings do not include an audiotape that was played for a jury and admitted as evidence. State v. Lane (1988),49 Ohio App.3d 158, 159, 551 N.E.2d 994; State v. Wedge (Dec. 21, 2001), 1st Dist. No. C-000747. In these cases, the court believes that a court reporter does not need to transcribe such a tape, although it cautions that prudence dictates that a party seeking to rely on the contents of such a tape submit a transcript of that tape for the appellate court's review. Id. In contrast, the Fourth District has held that audiotapes which are played for a fact-finder must be transcribed, even if the original audiotapes are made part of the record on appeal. In re GrandJury (June 1, 1995), 4th Dist. Nos. 93CA09, 93CA10, 93CA12.
 {¶ 81} App. R. 9(A) does not require that a court reporter transcribe the contents of audiotapes which are admitted as exhibits and played for a jury when preparing the trial transcript. Audiotapes which are admitted into evidence as exhibits are evidence, rather than a part of the trial proceedings. When appellate courts review those exhibits, we should review in the same state that the jury reviewed the evidence, i.e. as audiotape exhibits. App. R. 9(A) would not require the court reporter to transcribe audiotapes which are admitted into evidence, but not played for the jury; the fact that the tapes were played for the jury does not materially affect this issue.
 {¶ 82} Since the tape at issue in this case did not need to be transcribed, then we should not call the transcription of that tape a "trial transcript" and begin calculating the time for filing the petitions for post-conviction relief from the date that transcript was filed.
 {¶ 83} For these reasons, Appellants' petitions were untimely filed. The trial transcript was filed on September 23, 2005, and Appellants did not file their petitions for post-conviction relief until 185 days after this date. The Appellants' late filing cannot be excused under the doctrine of equitable tolling since their attorneys could have easily discovered the date that those transcripts were filed by checking the publicly available online docket. Accordingly, I would find that neither we nor the trial court had the jurisdiction to grant Appellants the relief that they sought in their post-conviction *Page 19 
petitions. For this reason, I would dismiss the appeal for lack of jurisdiction. *Page 1